IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| RAILROAD MAINTENANCE AND INDUSTRIAL HEALTH AND WELFARE FUND, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 09-cv-3001 |
| PROCUT CONCRETE SAWING SERVICE, INC., | ) ) ) | |
| Defendant. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

This case deals with an employer's obligation to comply with a collective bargaining agreement's requirement that notice be given by registered or certified mail in order to withdraw from a pension plan.

The Court holds that the notice requirement must be strictly complied with, and that notice via fax is inadequate.

This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1145.

The Plaintiff, the Railroad Maintenance and Industrial Health and Welfare Fund ("Fund"), is a multiemployer employee benefit plan.

The Defendant, ProCut Concrete Sawing Services, Inc. ("ProCut"), is an entity based in West Burlington, Iowa that provides concrete sawing services for residential and heavy industrial customers. Daniel Mark is the Vice President of ProCut.

# I

On December 28, 2006, a Memorandum of Agreement ("MOA") was executed between ProCut, Laborers' Local 539, and the Great Plains Laborers District Council. The MOA incorporated by reference a large number of Collective Bargaining Agreements already in force between the union and various builders' associations.

On or about the same date, Mark signed the Wage and Benefit Addendum to the Heavy Highway Construction Agreement.

In order to be eligible for insurance benefits from the Fund, ProCut employees were required to first work 300 hours.

Daniel Mark claims that during negotiations, representatives of Laborer's Local 538 assured him that ProCut employees would immediately enjoy Fund insurance coverage without having to work 300 hours. The union representatives have denied the allegation.

In May 2007, ProCut stopped making contributions to the Fund on behalf of its employees. On June 15, 2007, Mark sent a fax to Laborers' Local 538 stating the following:

> To whom it may concern,
>
> I am requesting a full refund of any dues paid to the [L]aborers [L]ocal 538 and its affiliates due to the misrepresentation, when I was approached on joining the union as a company, it was made VERY [c]lear that you were willing to let up to 5 employees join and have FULL [m]edical coverage right away and [waive] the usual required hours because we [were] a new company.
>
> After several months of getting the run around from Mr. Hartman stating that he was "looking into it" and [unreturned] phone calls from you, I was informed by the railroad fund that you in fact did not have the authority to have our employees join without working the required hours.

3

> I feel that with that said you deliberately lied about the medical coverage just to have us as a company join your union. The company was forced to purchase insurance [through] a reputable carrier so my employees would not be without.
>
> I have spent many hours and phone calls trying to work this situation out with you, but I have yet to receive a response from you in this matter. The only contact that I have received was from Mr. Hartman when he was collecting sign on dues.
>
> Due to your actions and failure to respond, I feel that you have breeched any agreement that we might have had.
>
> Dan Mark
>
> Vice President, ProCut Concrete Sawing

ProCut claims that it stopped making contributions to the Fund because of the alleged misrepresentations regarding the immediate availability of insurance coverage despite the 300-hour requirement.

Furthermore, ProCut claims that, although it was executed, the MOA never went into effect because the union acted in a manner inconsistent with the existence of a collective bargaining agreement, no ProCut employees were union members, and ProCut employees did not receive any health benefits from the Fund.

II

"Summary judgment is appropriate when the evidence submitted, viewed in the light most favorable to the non-moving party, shows 'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009) (quoting Fed. R. Civ. P. 56(c) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

In order to survive summary judgment, there must be sufficient evidence that a reasonable factfinder could return a verdict for the nonmoving party. *Trade Finance Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-407 (7th Cir. 2009).

"[A] motion for summary judgment requires the responding party to come forward with the evidence that it has - it is the 'put up or shut up' moment in a lawsuit." *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009) (internal quotation marks and citations omitted). Although inferences are drawn in favor of the nonmoving party, inferences relying on speculation or conjecture

are insufficient. *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009).

III

A

Federal common law rules of contract interpretation apply when a contract is interpreted in the context of an ERISA claim. *Cent. States Se. & Sw. Areas Pension Fund v. Kroger Co.*, 73 F.3d 727, 731 (7th Cir. 1996). "Under these rules, a document should be read as a whole with all its parts given effect, and related documents must be read together." *Bland v. Fiatallis N. Am., Inc.*, 401 F.3d 779, 783 (7th Cir. 2005). Courts should give contract terms their ordinary and popular sense and should not use extrinsic evidence if the language is unambiguous. *Id.* at 784.

Whether a contract term or terms at issue are ambiguous is a question of law. *Kroger*, 73 F.3d at 732. A collective bargaining agreement is ambiguous if it is reasonably susceptible to more than one reasonable interpretation. *Id.* When parties suggest different, yet reasonable interpretations of a contract, the contract is

ambiguous. *Id.* If the term is unambiguous, the Court may declare its meaning as a matter of law. *Id.* If there is ambiguity, the interpretation issue must be decided by a trier of fact. *Id.*

B

The Defendant's arguments regarding the validity of the MOA are without merit. The U.S. Court of Appeals for the Seventh Circuit has held the following:

> If the employer simply points to a defect in its formation-such as fraud in the inducement, oral promises to disregard the text, or the lack of majority support for the union and the consequent ineffectiveness of the pact under labor law-it must still keep its promise to the pension plans.
>
> Anything less may well saddle the plans with unfunded obligations.

*Cent. States Se. & Sw. Areas Pension Fund v. Gerber Truck Svc., Inc.,* 870 F.2d 1148, 1151 (7th Cir. 1989) (en banc).

In a later case, the Seventh Circuit stated that "[n]o matter what an employer and local union agree orally, the collective bargaining and contribution agreements establish the employer's obligation to the pension fund, which is not party to local understandings and limitations." *Cent. States Se. & Sw. Areas*

7

*Pension Fund v. Joe McClelland, Inc.*, 23 F.3d 1256, 1258 (7th Cir. 1994); *see also Cent. States Se. & Sw. Areas Pension Fund v. Cent. Cartage Co.*, 69 F.3d 1312, 1314 (7th Cir. 1995) ("*Gerber Truck Service* precludes the use of extrinsic evidence that was unknown to a pension or welfare fund.").

Therefore, it is irrelevant that the union acted in a manner inconsistent with the existence of a collective bargaining agreement, that no ProCut employees are union members, or that no employee of ProCut received healthcare through the fund. Even if the Court assumes that the union representative lied to Mark regarding the MOA, ProCut's obligations to the Fund remain unchanged.

The Court recognizes that the rule outlined in *Gerber* and its progeny can produce a harsh result for employers. However, the rule is necessary to protect the integrity of the pension and welfare regime under ERISA. The Seventh Circuit summarized the rationale for its holding in *Gerber* as follows:

> We grounded our rule in several policy considerations, some of which were revealed in congressional hearings on Section 515 [of ERISA]. Among the considerations Congress expressed was the high cost of collecting delinquent contributions, including the

cost of litigation concerning claims and defenses unrelated to the employer's promise to pay. In order to remedy this problem, Section 515 makes employer's promises enforceable "to the extent not inconsistent with law." Anything less, we reasoned, could saddle the plans with unfunded obligations, because the plans are obliged to cover the employees under the terms of the participation agreements regardless of whether the employers make appropriate contributions.

*Cent. States Se. & Sw. Areas Pension Fund v. Transport, Inc.*, 183 F.3d 623, 628 (7th Cir. 1999) (citations omitted).

## C

The next issue is to determine the impact of the fax sent by Mark on June 15, 2007. The Defendant argues alternatively that even if the MOA was effective, it was terminated on the date of Mark's fax.

Paragraph Eight of the MOA states the following:

This agreement shall remain in full force and effect through April 30, 2008, and shall continue thereafter unless there has been sixty (60) days written notice, by registered or certified mail, by either party hereto of the desire to modify or amend this Agreement for negotiations. The EMPLOYER and the UNION agree to be bound by the area-wide negotiated contracts with the various Associations, incorporating them into this Memorandum of Agreement and extending this Agreement for the life of the newly negotiated contract if not notified within the specified period of time.

As detailed above, Mark's fax expressed his disappointment with the union, and concluded: "Due to your actions and your failure to respond, I feel that you have breached any agreement that we might have had."

Mark's fax message is insufficient to terminate or suspend the MOA. As Mark noted in his deposition, the sentence quoted from the fax "does not come right out and say" that the MOA or any other labor agreements are being terminated.

Even if Mark's letter could constitute notice, he did not transmit the document in the manner set forth in the MOA. Mark's letter was faxed, not sent by registered or certified mail, as required by Paragraph Eight of the MOA. Although this point may seem picayune, it is important.

The manner of transmitting notice does have consequences. *See Schikore v. BankAmerica Supp. Retirement Plan*, 269 F.3d 956, 963 (9th Cir. 2001) (noting that "the Plan requires only actual receipt and does not require any particular form of mailing"

in determining whether to apply the presumption of receipt under the mailbox rule).

Of course, the primary purpose of requiring the use of registered or certified mail is evidentiary - to prove transmittal or receipt by the other party.  In this case, the parties do not dispute receipt.

However, the use of registered or certified mail provides other benefits, besides its evidentiary uses.  When a party sends a notice via registered or certified mail the following occur: (1) the sending party demonstrates that it is contemporaneously interpreting the document sent as formal written notice under the contract, and (2) the receiving party is notified that the document is a formal written notice that must be acted upon.  *Cf.* Lon L. Fuller, *Consideration and Form*, 41 Colum. L. Rev. 799, 801-804 (1941) (discussing "channeling function" of legal formalities in contract formation, which facilitate "judicial diagnosis" by forcing actions into "defined and recognized channels").

Courts have held that the terms of "evergreen clauses" such Paragraph 8 of the MOA must be strictly complied with. *See Gerber*, 870 F.2d at 1156; *Local 257, Int'l Bhd. of Elec. Workers, AFL-CIO v. Grimm*, 786 F.2d 342, 346 (8th Cir. 1986); *Residential Reroofers Local 30-B Health & Welfare Fund of Philadelphia & Vicinity v. A & B Metal & Roofing, Inc.*, 976 F. Supp. 341, 347 (E.D. Pa. 1997); *Int'l Bhd. of Elec. Workers Local Union No. 654 Health & Welfare Fund v. Indus. Valley Controls, Inc.*, No. 09-5840, 2010 WL 4138565, at *5 (E.D. Pa. 2010).

The Court notes that while there is no federal case dealing directly with this exact scenario regarding notice and certified or registered mail, *Gerber* provides substantial guidance.[1] In *Gerber*, the Court of Appeals held that when the CBA required written notice of cancellation, oral notice was insufficient, as was a written

---

[1] To the extent that the Court could consider state contract law, *see Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997), the outcome would likely be the same. *See Suburban Auto Rebuilders, Inc. v. Associated Tile Dealers Warehouse, Inc.*, 388 Ill. App. 3d 81, 90-91 (1st Dist. 2009) (strictly construing requirement to send notice via certified or registered mail); *cf. J.C. White v. RCA Serv. Co.*, 234 N.W.2d 153, 155-56 (Iowa 1975) (recognizing that sending notice by the method contracted for is important in contract law).

statement that no further contributions to the fund would be made. *Gerber,* 870 F.2d at 1156.

The Court concludes that the contract language is clear and unambiguous - notice must be sent by registered or certified mail. When contract terms are clear and unambiguous, the terms will be given their ordinary meaning, and the Court will enforce the contract as written.

Accordingly, the Court concludes that Mark's faxed letter did not constitute proper notice under the MOA.

## D

The Court notes that the Defendant has denied nearly every alleged material fact set out by the Plaintiff in the Motion for Summary Judgment. Most of the denials are baseless, and are unsupported by the record before the Court. The remaining denials by the Defendant do not raise genuine issues of material fact and, as a result, the Court will not address them.

E

On March 30, 2011, the Plaintiff filed its Motion for Attorney's Fees and Costs. In the Motion, the Plaintiff requests attorney fees and costs pursuant to Section 1132(g)(2)(d) of ERISA, Federal Rule of Civil Procedure 54, and Local Rule 54.1.

Attached to the Motion is an Affidavit submitted by Attorney James P. Moody and the Restated Agreement and Declaration of Trust of the Railroad Maintenance and Industrial Health and Welfare Fund. The Defendant has not filed a timely response to the Motion.

The Court finds that the Plaintiff is entitled to the attorney's costs and fees detailed in the Motion.

IV

*Ergo,* the Plaintiff's Motion for Summary Judgment is ALLOWED.

The Plaintiff's Motion for Attorney's Fees and Costs is ALLOWED.

Judgment is hereby entered in favor of the Plaintiff and against the Defendant in the amount of $75,901.13, which consists of delinquent contributions of $49,797.92; late fees, penalties, and interest in the amount of $24,382.79; and audit costs of $1,720.42; plus Plaintiff's attorney's fees and costs in the amount of $28,866.16.

The Clerk of Court is directed to forward a copy of this Opinion to Douglas W. Simpkin, Registered Agent, ProCut Sawing Service, Inc., 514 Cedar Street, Tipton, Iowa 52772.

IT IS SO ORDERED.

ENTER: May 23, 2011

FOR THE COURT: /s/ Richard Mills
Richard Mills
United States District Judge